SIEGEL, Appellant, vs. THE MILWAUKEE & NORTHERN RAIL-
ROAD COMPANY, Respondent.

*March 18 — April 9, 1891.*

*Contributory negligence: Directing verdict.*

In an action against a railroad company for an injury received by
plaintiff at a highway crossing, it appeared in evidence that plaint-
iff, who was familiar with the locality, was driving his team with a
heavily loaded sled down a hill towards the crossing, and had his
ears covered to protect them from the cold; that a strong wind
was blowing towards the direction from which the train came;
that he stopped several times on the descent to look and listen for
trains, but, not seeing or hearing any, drove slowly on, and, when
within half a rod from the track and going down a pitch made
more steep by snow thrown off the track, first heard the whistle of
the engine, but was then unable to stop his horses. *Held,* that the
court erred in taking the question of plaintiff's contributory negli-
gence from the jury and directing a verdict for defendant.

APPEAL from the Circuit Court for *Brown* County.

This is an action against a railroad company for an injury
to plaintiff and his team, received from a collision with a
train at a highway crossing. All the essential facts are
stated in the opinion. The plaintiff appeals from a judg-
ment for defendant upon a verdict directed by the court.

For the appellant there was a brief by *Wigman & Mar-
tin,* and oral argument by *J. H. M. Wigman.* They argued
that the evidence showed that the crossing where the acci-
dent occurred was made very dangerous by the negligence
of the defendant, and that its trainmen were bound to ex-
ercise the greater care on that account. It is only where
the facts are undisputed and but one reasonable inference
can be drawn from them, that the question of contributory
negligence can be properly taken from the jury, citing
numerous cases.

For the respondent there was a brief by *A. H. Bright*

Siegel vs. The Milwaukee & Northern R. Co.

and *Burton Hanson*, and oral argument by *A. H. Bright.* They contended that the plaintiff's own testimony and other uncontradicted evidence shows that the plaintiff's negligence concurred with that of defendant to produce the injury, and the judgment should be affirmed. *Rothe v. C., M. & St. P. R. Co.* 21 Wis. 258; *Langhoff v. C. & N. W. R. Co.* 23 id. 43; *Delaney v. M. & St. P. R. Co.* 33 id. 72; *Kearney v. C., M. & St. P. R. Co.* 47 id. 144; *Williams v. C., M. & St. P. R. Co.* 64 id. 1; *Seefeld v. C., M. & St. P. R. Co.* 70 id. 220; *Schilling v. C., M. & St. P. R. Co.* 71 id. 255; *Haas v. C. & N. W. R. Co.* 41 id. 44; *Gunn v. W. & M. R. Co.* 70 id. 203. If he had looked after he had passed the obstruction, some seventy-five feet from the crossing, he could have seen the train, and was negligent in not doing so. *Freeman v. Duluth, S. S. & A. R. Co.* 74 Mich. 86; *Brown v. Mil. & St. P. R. Co.* 22 Minn. 165; *Wegl v. C., M. & St. P. R. Co.* 40 id. 350; *Atchison, T. & S. F. R. Co. v. Townsend,* 39 Kas. 115; *Haines v. Ill. Cent. R. Co.* 41 Iowa, 227; *Cullen v. Del. & H. Canal Co.* 113 N. Y. 667; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 383; *Parvis v. Phila., W. & B. R. Co.* (Del.), 17 Atl. R. 702; *Heaney v. Long I. R. Co.* 112 N. Y. 122; *Morris v. C., M. & St. P. R. Co.* 26 Fed. Rep. 22; *Chase v. Maine Cent. R. Co.* 78 Me. 346.

Cole, C. J. We think the trial court erred in taking this case from the jury and directing a verdict for the defendant. The questions as to the contributory negligence of the plaintiff, as well as that of the negligence of the defendant, were questions of fact for the jury, and not for the court, to determine.

It is admitted that the train was running at an unlawful rate of speed within the limits of the city. Whether there was proper warning given, by blowing the whistle or by the ringing of the bell, as the train approached the highway

crossing, was a matter in dispute. That crossing, at the time, was dangerous and difficult for a loaded team to pass over readily, and the deep pitch-hole in the highway where it crossed the railroad track was doubtless caused by the railroad company throwing the snow from its track out on to the highway and leaving it there, thus accumulating the snow at that place, which formed the pitch-hole of which the witnesses speak. This rendered the crossing for the loaded team difficult and more dangerous than it would have been had the snow which was thrown from the railroad track been kept out of the highway. The road-bed of the track was somewhat below the level of the highway at that point, and this tended also to increase the steepness of the pitch-hole in the highway. The plaintiff approached the crossing where the collision occurred from the west, with his team and sleigh loaded with a cord and a quarter of wood, going to Green Bay. The highway ran nearly east and west. The railroad track crossed the highway at an acute angle from the northwest to the southeast. There was a slight ascent from the railroad track west on the highway. The train in question was coming from the northwest, partially behind the plaintiff, as he was driving east. It was a clear but very cold winter morning, and the plaintiff had his face and ears wrapped up to keep them from freezing, and this must have interfered with his hearing, and besides the wind was blowing in the direction of the coming train. The plaintiff says, in substance, that as he came to the hill west of the crossing he stopped and looked for the train to the left, and could neither see nor hear it. He then drove on down the hill, on a walk, until he heard the whistle blow. His horses then were about a half rod from the track, and he tried to stop them, but could not. Common experience teaches that it would be almost impossible to stop a team at once which was going down even a slight declivity, with a heavily loaded sleigh

pressing on them.   The sleigh was struck by the locomotive, and the plaintiff and team were injured as alleged.

Now, it is insisted that the court should say, as a matter of law, that the plaintiff was negligent in placing himself and team in this dangerous position.   It is said he was perfectly familiar with the situation; that he traveled over the highway frequently, knew all about the hill and the pitchhole in the highway at the crossing, and also knew that a train was about due, and that the view to the northwest was somewhat obstructed at different points from the top of the hill where he had looked for the train down to the track.   It is shown that there were trees and alder bushes on the north of the highway, which precluded one from seeing a train approaching, though it appears there was a place six or eight rods west of the crossing where one could look through these trees and alder bushes and see the railroad track.   But at this point one could have only a limited view of the railroad track, and an approaching train could only be seen if it happened to be in the line of vision.   These are the principal facts upon which the contributory negligence of the plaintiff is predicated, and the question is, do they show so clearly that the plaintiff was guilty of negligence as to justify the court in withdrawing the case from the jury?   It seems to us they do not.

This court, in many cases, has affirmed the rule of law that it was the duty of a person approaching a railroad crossing to be vigilant and attentive, to use his senses and look and listen for trains, when it would do any good to look and listen, before placing himself or his team in a position of danger.   But it is obvious that no more specific rule can be laid down on the subject, and each case must be determined by its own peculiar facts.   Now in the case at bar the plaintiff says he did stop on the hill and looked and listened if a train were coming from the northwest, and, neither seeing nor hearing any, he drove down towards the

crossing. He was then several hundred feet from the crossing, and, a great portion of the way down, his view to the northwest was almost entirely obstructed by trees and thick brush. It is true there was one point, 100 or 150 feet from the track, at what is known as the "Cross Street," where he could see the railroad track at the north. He says: "I could have seen the train if it had been where that small road crosses. When I turned around, trying to look, I could not see anything. So I drove on. The first thing I knew I heard the whistle and the bell." Then the horses were on the edge of the pitch-hole, and could not be stopped. But, without dwelling on the evidence further, it is sufficient to say that it was eminently a question for the jury to determine whether, under all the circumstances, the plaintiff exercised due care and caution in approaching the railroad crossing. It seems to us it is impossible, in view of the testimony, to say, as a matter of law, that he was reckless and guilty of such a want of care as will prevent a recovery in the action for his damages. But, as there must be a new trial, it would be improper for us to indicate any more distinctly our view of the testimony and as to the facts it tends to establish. It was not so clear that the plaintiff was guilty of contributory negligence as to warrant the court in taking the case from the jury. The law applicable to the case is so fully considered in our previous decisions, to which counsel refer, especially in *Williams v. C., M. & St. P. R. Co.*, 64 Wis. 1; *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, that no further remarks as to the law are called for. We adhere to these decisions, but we do not think they sustain the ruling of the trial court in this case. The judgment must therefore be reversed, and the cause be remanded for a new trial.

*By the Court.*— It is so ordered.